# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| CHARTER COMMUNICATIONS HOLDING COMPANY, LLC, CHARTER COMMUNICATIONS OPERATING, LLC, and BRIGHT HOUSE NETWORKS, LLC,<br><br>     Plaintiffs,<br><br> v.<br><br>SONUS NETWORKS, INC. and RIBBON COMMUNICATIONS OPERATING COMPANY, INC.,<br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) C.A. No.: N22C-09-529 EMD CCLD<br>)<br>)<br>)<br>)<br>)<br>) |

Submitted: March 14, 2025
Decided: May 14, 2025

*Upon Defendants' Motion for Summary Judgment,*
**GRANTED.**

*Upon Plaintiffs' Motion for Summary Judgment,*
**DENIED.**

Kelly E. Farnan, Esquire, Sara M. Metzler, Esquire, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; Daniel L. Resiner, Esquire, David Benyacar, Esquire, Michael A. Lynn, Esquire, Melissa Brown, Esquire, ARNOLD & PORTER KAYE SCHOLER LLP, New York, New York, Peter H. Vogel, Esquire, Dina Hayes, Esquire, ARNOLD & PORTER KAY SCHOLER LLP, Chicago, Illinois. *Attorneys for Plaintiffs.*

S. Michael Sirkin, Esquire, Roger S. Stronach, Esquire, A. Gage Whirley, Esquire, Thomas C. Mandracchia, Esquire, ROSS ARONSTAM & MORITZ LLP, Wilmington, Delaware; Kurt M. Pankratz, Esquire, Susan Kennedy, Esquire, Ryan T. Ward, Esquire, BAKER BOTTS LLP, Dallas, Texas, *Attorneys for Defendants.*

**DAVIS, P. J.**

## I. INTRODUCTION

This is an action for indemnification stemming from federal patent litigation. Plaintiffs Charter Communications Holding Company, LLC ("CCHC"), Charter Communications Operating , LLC ("CCO") and Bright House Networks, LLC ("BHN" and together with CCHC and CCO, "Plaintiffs") were sued in multiple venues for patent infringement, at least in part because of their use of products made by Defendants Sonus Networks, Inc. ("Sonus") and Ribbon Communications Operating Company, Inc. ("Ribbon" and together with Sonus, "Defendants"). Plaintiffs reached a global settlement for $220 million. In addition, Plaintiffs incurred over $25 million in fees and costs related to the patent infringement litigation.

Prior to that litigation, Plaintiffs signed three separate agreements with Ribbon. Each agreement contains an indemnification provision. Defendants have moved for summary judgment, contending that Plaintiffs failed to provide contractual notice and otherwise did not allow the Defendants to take control of Plaintiffs' defense or settlement discussions. Plaintiffs move for summary judgment, asking the Court to find that Defendants' expert improperly calculated damages.

To survive summary judgment, it is not enough that a party says there is a factual issue that needs to be resolved at trial. Rather, the Court examines the record to determine if there are genuine issues of material fact. The factual record is closed in this civil action. Based on that record, the Court has determined that are no genuine issues as to material facts. The Court finds that Plaintiffs failed to provide the required contractual notice to Defendants or properly tender the control of the patent infringement litigation. Accordingly, the Court **GRANTS** Defendants' motion for summary judgment ("Defendants Motion").[1]

---

[1] D.I. No. 159.

Defendants Motion is case dispositive. Accordingly, Plaintiffs' motion for summary judgment ("Plaintiffs Motion")[2] is **DENIED** as moot.

## II. STANDARD OF REVIEW

The standard of review on a motion for summary judgment is well-settled. The Court's principal function when considering a motion for summary judgment is to examine the record to determine whether genuine issues of material fact exist, "but not to decide such issues."[3] Summary judgment will be granted if, after viewing the record in a light most favorable to a nonmoving party, no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law.[4]

If, however, the record reveals that material facts are in dispute, or if the factual record has not been developed thoroughly enough to allow the Court to apply the law to the factual record, then summary judgment will not be granted.[5] The moving party bears the initial burden of demonstrating that the undisputed facts support his claims or defenses.[6] If the motion is properly supported, then the burden shifts to the non-moving party to demonstrate that there are material issues of fact for the resolution by the ultimate fact-finder.[7]

"These well-established standards and rules equally apply [to the extent] the parties have filed cross-motions for summary judgment."[8] Where cross-motions for summary judgment are

---

[2] D.I. No. 160.

[3] *Merrill v. Crothall-American Inc.*, 606 A.2d 96, 99-100 (Del. 1992) (internal citations omitted); *Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver, Inc.*, 312 A.2d 322, 325 (Del. Super. 1973).

[4] *Id.*

[5] *See Ebersole v. Lownegrub*, 180 A.2d 467, 470 (Del. 1962); *see also Cook v. City of Harrington*, 1990 WL 35244, at *3 (Del. Super. Feb. 22, 1990) (citing *Ebersole*, 180 A.2d at 467) ("Summary judgment will not be granted under any circumstances when the record indicates . . . that it is desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances.").

[6] *See Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1970) (citing Ebersole, 180 A.2d at 470).

[7] *See Brzoska v. Olsen*, 668 A.2d 1355, 1364 (Del. 1995).

[8] *IDT Corp. v. U.S. Specialty Ins. Co.*, 2019 WL 413692, at *5 (Del. Super. Jan. 31, 2019)(citations omitted); *see Capano v. Lockwood*, 2013 WL 2724634, at *2 (Del. Super. May 31, 2013) (citing *Total Care Physicians, P.A. v. O'Hara*, 798 A.2d 1043, 1050 (Del. Super. 2001)).

3

filed and neither party argues the existence of a genuine issue of material fact, "the Court shall deem the motions to be the equivalent of a stipulation for decision on the merits based on the record submitted with the motions."[9] But where cross-motions for summary judgment are filed and an issue of material fact exists, summary judgment is not appropriate.[10] To determine whether there is a genuine issue of material fact, the Court evaluates each motion independently.[11] The Court will deny summary judgment if the Court determines that it is prudent to make a more thorough inquiry into the facts.[12]

### III. RELEVANT FACTS[13]

#### A. THE PARTIES

Plaintiffs provide cable, internet, and phone services in 41 states in both residential and commercial settings.[14] Defendants provide software and hardware products to allow telephone services to be delivered over internet-based networks.[15]

#### B. THE AGREEMENTS

Through a series of acquisitions, Defendants became the counterparties to three agreements to provide hardware and software to Plaintiffs.[16] First, Defendants acquired the Purchase and License Agreement between Nortel Networks Inc. and CCHC (the "Nortel

---

[9] Del. Super. Civ. R. 56(h).

[10] *Motors Liquidation Co. DIP Lenders Tr. v. Allianz Ins. Co.*, 2017 WL 2495417, at *5 (Del. Super. June 19, 2017*), aff'd sub nom., Motors Liquidation Co. DIP Lenders Tr. v. Allstate Ins. Co.*, 191 A.3d 1109 (Del. 2018); *Comet Sys., Inc. S'holders' Agent v. MIVA, Inc.*, 980 A.2d 1024, 1029 (Del. Ch. 2008); *see also Anolick v. Holy Trinity Greek Orthodox Church, Inc.*, 787 A.2d 732, 738 (Del. Ch. 2001) ("[T]he presence of cross-motions 'does not act per se as a concession that there is an absence of factual issues.'") (quoting *United Vanguard Fund, Inc. v. TakeCare, Inc.*, 693 A.2d 1076, 1079 (Del. 1997))).

[11] *Motors Liquidation*, 2017 WL 2495417, at *5; *see Fasciana v. Elec. Data Sys. Corp.*, 829 A.2d 160, 167 (Del. Ch. 2003).

[12] *Ebersole*, 180 A.2d at 470–72.

[13] Numbered exhibits refer to those attached to Plaintiffs' motion while lettered exhibits refer to those attached to Defendants' motion.

[14] Ex. 3.

[15] Ex. 21, Ex. 3.

[16] D.I. 13 ("Answer") ¶¶7-8. Defendants note that Sonus is not a party to any of the agreements after the acquisitions. The Court refers to Defendants collectively for simplicity.

Agreement").[17]  Second, Defendants acquired the Master Agreement between Cedar Point Communications, Inc. and CCO (the "Cedar Point Agreement").[18]  Third, Defendants acquired the Standard Purchase and License agreement between BHN and Sonus Networks, Inc. (the "Sonus Agreement").[19]  The Court will collectively refer to the Nortel Agreement, the Cedar Point Agreement and the Sonus Agreement as the "Agreements."

The Agreements contain indemnification provisions.  The Nortel Agreement indemnification provision states:

> If a third party claims that [Defendants'] Hardware or Software provided to Customer under this Agreement infringes that party's patent or copyright, [Defendants] will defend Customer against that claim at [Defendants'] expense and pay all costs and damages that a court finally awards or are agreed in settlement, provided that Customer a) promptly notifies [Defendants] in writing of the claim and b) allows [Defendants] to control, and cooperates with [Defendants] in, the defense and any related settlement negotiations.  Customer may at its discretion participate in the defense of the claim and in doing so shall be responsible for the cost associated with its participative representation.[20]

The Cedar Point Agreement indemnification provides:

> [Defendants] will, at its own expense, indemnify, defend and hold harmless Company . . . from and against any and all actions . . . connected with or in any manner arising from (a) any allegation by any third party that any Product, and/or the Company's use of the Product, infringes upon any . . . U.S. or Canadian patent . . . . The foregoing obligations are conditioned on Company notifying [Defendants] promptly in writing of such action, provided that any failure to provide such notice shall not relieve [Defendants] of its indemnification obligations hereunder, except to the extent that [Defendants'] ability to defend such Claim is actually prejudiced by such failure; giving [Defendants] sole control of the defense thereof and any related settlement negotiations . . . . Company may participate in the defense or settlement of any Claim with counsel at its own expense.[21]

---

[17] Ex. A.
[18] Ex. B.
[19] Ex. C.  In 2017, the Sonus Network, Inc. that is the counterparty to the Sonus Agreement changed its name to Ribbon Communications, Inc.  Defendant denies that Defendant Sonus is the successor-in-interest to the Sonus Agreement.  Ans. ¶ 9.
[20] Nortel Agreement, § 10.
[21] Cedar Point Agreement, § 6.1.

Finally, the Sonus Agreement indemnification provision states:

> [Defendants] will indemnify, defend and hold Customer harmless from and against all liability, loss, costs, damages, and reasonable attorney's fees ("Losses") arising out of any claim alleging that any Product or Deliverable . . . infringes any United States patent . . . of a third party. [Defendants'] indemnification obligation is subject to Customer's (i) tendering to [Defendants] (and its insurer) full authority to defend or settle any such claim and (ii) reasonable cooperation in the defense of such claim, at [Defendants'] sole expense. Customer will notify [Defendants] in writing of any such claim reasonably promptly after receipt by Customer of notice of such claim, provided that any failure to give such prompt notification will not relive [Defendants] of its obligations hereunder except to the extent that [Defendants'] ability to defend such claim is prejudiced thereby. . . . Customer may retain its own counsel in connection with any such claim at its own expense.[22]

The Agreements provide that Defendants will not indemnify Plaintiffs if Plaintiffs combine Defendants' hardware and software with any other company's products as an infringing system.[23]

The Agreements all require written notice of any claim that may give rise to an indemnification obligation.[24] However, the Agreements do vary on what must be contained in the written notice and the timing of the written notice.[25]

The Nortel Agreement and Sonus Agreement are governed by New York law.[26] Delaware law governs the Cedar Point Agreement.[27]

## C. THE LITIGATION

Sprint Communications Company L.P. ("Sprint") filed several lawsuits against Plaintiffs in Delaware, Kansas, and Texas.[28] Only case number 17-cv-1734 (D. Del.) (the "Litigation")

---

[22] Sonus Agreement, § 7.
[23] Nortel Agreement, § 10; Cedar Point agreement, § 6.1; Sonus Agreement, § 7.
[24] *Id.*
[25] *Id.*
[26] Nortel Agreement, § 12; Sonus Agreement, § 14.
[27] Cedar Point Agreement, §14.5.
[28] Ex. AZ.

filed by Sprint in the United States District Court of Delaware (the "District Court") on December 1, 2017 concerns the Defendants.

Sprint filed an Amended Complaint in the Litigation on December 15, 2017.[29] The Amended Complaint specifically references equipment provided to Plaintiffs by Nortel and Cedar Point.[30] Plaintiffs filed a motion to dismiss the Litigation on February 28, 2018, and the motion was fully briefed by April 10, 2018.[31] The District Court denied the motion to dismiss on May 22, 2018.[32] Plaintiffs answered the Amended Complaint and asserted counterclaims on June 19, 2018.[33] A scheduling order was entered on August 29, 2018.[34]

Sprint served its identification of accused products and services on September 5, 2018.[35] Sprint served its initial infringement contentions on December 21, 2018.[36] Discovery, including fact and expert discovery, closed in June of 2020,[37] although the parties deposed certain witnesses in 2021.[38]

The claim construction process began on April 4, 2019, and the District Court issued its claim construction order on January 6, 2020.[39] The parties served final infringement and invalidity contentions in February of 2020.[40]

---

[29] Litigation, D.I. 14.
[30] Litigation, D.I. 14 at ¶ 52.
[31] Litigation, D.I. 19 and D.I. 30.
[32] Litigation, D.I. 31.
[33] Litigation, D.I. 33.
[34] Litigation, D.I. 50.
[35] Litigation, D.I. 51.
[36] Litigation, D.I. 88.
[37] Ex. AB.
[38] Ex. AA, at ¶¶ 4-5; Ex. 24, ¶¶125-26.
[39] Litigation, D.I. 304.
[40] Litigation, D.I. 376 and 377.

Summary judgment and Daubert briefing began on June 12, 2020, and the District Court made its rulings on March 16, 2021.[41] The parties moved to stay all deadlines in the case on April 27, 2021.[42] The District Court dismissed the case on March 22, 2022.[43]

## D. SETTLEMENT COMMUNICATIONS

Plaintiffs and Sprint began settlement discussions the same day the Litigation was filed.[44] A settlement offer was made on January 30, 2018.[45] An unsuccessful mediation occurred in April 2018, and settlement discussions continued.[46] Sprint made a new settlement offer in July 2018.[47] The parties continued discussing settlement, and Sprint made a subsequent settlement offer in September 2020.[48] Sprint made another settlement offer in December 2020,[49] and Plaintiffs countered on February 15, 2021.[50] The parties traded offers again in March and April 2021.[51] The parties reached a tentative settlement on April 20, 2021.[52]

Plaintiffs notified Defendants of settlement discussions for the first time on April 28, 2021—eight days after reaching a tentative settlement with Sprint.[53] Sprint and Plaintiffs executed a settlement agreement in March 2022 (the "Settlement Agreement").[54] The Settlement Agreement resolved all suits between Sprint and the Plaintiffs, not just the Litigation.[55]

---

[41] Litigation, D.I. 565, 567, 569, 573.
[42] Litigation, D.I. 574.
[43] Litigation, D.I. 589.
[44] Ex. O.
[45] Ex. P.
[46] Ex. M.
[47] Ex. Q.
[48] Ex. AI.
[49] Ex. AJ.
[50] Ex. AK.
[51] Ex. AL.
[52] Ex. AN.
[53] Ex. AO.
[54] Ex. AZ.
[55] *Id.*

### E. PLAINTIFFS' COMMUNICATIONS WITH DEFENDANTS

Plaintiffs sent Defendants a letter on October 31, 2018 (the "October 2018 Letter").[56] The October 2018 Letter states that Kirkland & Ellis LLP represents Plaintiffs in the Litigation, specifically referencing the case name and number.[57] The letter mentions that Plaintiffs are required to produce documents in the Litigation and those documents may contain Defendants' confidential information.[58] There is no mention in the October 2018 Letter about the nature of the suit, and no mention of indemnification. Moreover, the letter does not specify or otherwise mention if Defendants' products were at issue—*i.e.*, "accused products"—in the Litigation.

On October 18, 2019, Plaintiffs served a third-party subpoena on Defendants (the "Subpoena").[59] The Subpoena defines "Accused Products" to be certain products sold by Ribbon.[60] The Subpoena does not mention indemnification. The Court has not been provided with any cover letter or the like that cites to the indemnification provisions in the Agreements.

On July 20, 2020, Plaintiffs sent a letter (the "July 2020 Letter") to Defendants stating "We are providing notice of the above matter to you pursuant to the indemnification provisions of our November 24, 2004 Master Agreement with Cedar Point Communications Inc, June 10, 2011 Master Purchase Agreement with Sonus Networks, Inc., and all applicable amendments and subsequent agreements. Please let me know when you are available to discuss how we can effectively defend this claim."[61] The agreements referenced in the July 2020 Letter are not the Cedar Point Agreement (signed in 2008) or Sonus Agreement (different parties). There is no mention of the Nortel Agreement.

---

[56] Ex. R.
[57] *Id*.
[58] *Id*.
[59] Ex. T.
[60] Ex. T.
[61] Ex. X.

On August 7, 2020, Defendants sent a letter responding to the July 2020 Letter.[62] Defendants asked for additional information from Plaintiffs so as to investigate the claim.[63]

On September 1, 2020, Plaintiffs sent Defendants a letter summarizing the infringement contentions in the Litigation and asked to discuss "an appropriate Ribbon contribution" to defense costs and to "begin discussions regarding Ribbon's indemnification obligations."[64]

On September 25, 2020, Defendants responded, saying they were investigating the infringement contentions.[65] Defendants expressed concern that the "case has been in litigation for over three years, and yet you have only recently notified Ribbon that you wish to invoke your defense and indemnification rights."[66]

Three months later, on December 24, 2020, Plaintiffs responded that the October 2018 Letter and Subpoena constituted notice under the agreements.[67] Plaintiffs said because no trial date was set, "[t]here are many important decisions that remain about which [] defenses should be relied on at trial."[68] This letter also contained a breakdown apportioning damages that Defendants would be responsible for if Plaintiffs were found liable.[69] This letter does not mention any settlement discussions.

## IV. PARTIES' CONTENTIONS

### A. DEFENDANTS MOTION

Defendants argue that Plaintiffs failed to give prompt notice of the Litigation and failed to give them the necessary control of the Litigation or settlement discussions.[70] Defendants

---

[62] Ex. AD.
[63] *Id.*
[64] Ex. H.
[65] Ex. AE.
[66] *Id.*
[67] Ex. AF.
[68] *Id.*
[69] *Id.*
[70] Trans. ID. 75016596 ("Def. Op. Br."), at 19-28.

maintain that notice is a condition precedent that was not fulfilled by Plaintiffs, and thus Defendants do not owe indemnification.[71]  Defendants contend that the October 2018 Letter and Subpoena do not constitute prompt notice, because they were sent at least 10 months after the litigation started, because they only contain the case name and number with no mention of the claims against their products, and Plaintiffs did not know whether any claims were indemnifiable when those were sent.[72]

Defendants further argue that by not tendering control of the Litigation, Plaintiffs committed a prior material breach of the agreements that excused Defendants' performance.[73]

Finally, Defendants assert that Plaintiffs failed to strictly comply with the notice requirements of the Cedar Point Agreement because Plaintiffs did not send it by overnight mail.[74]

Plaintiffs respond that notice cannot be a condition precedent because lack of prompt notice did not relieve Defendants of their indemnification obligations.[75]  Regardless, Plaintiffs say that the October 2018 Letter and Subpoena constituted notice.[76]  Plaintiffs argue that it is immaterial that Plaintiffs did not know if the claims were indemnifiable until after those were sent, because the Agreements only require notice of the claims.[77]  Plaintiffs say Defendants were not prejudiced at any point, because the October 2018 Letter constituted notice and very little had happened in the Litigation by that point.  Further, Defendants were aware of the Litigation from other sources.[78]  Plaintiffs also note that Defendants concluded that the claims in the

---

[71] *Id.*
[72] Def. Op. Br., at 22-23.
[73] Def. Op. Br., at 28, 31, 35.
[74] Def. Op. Br., at 33.
[75] Trans, ID. 75175503 ("Pl. Ans. Br."), at 17-18.
[76] Pl. Ans. Br., at 19-22.
[77] Pl. Ans. Br., at 22.
[78] *Id.* at 30

11

Litigation were not indemnifiable, so Defendants were never going to defend the Litigation regardless of when Plaintiffs provided notice.[79]

Plaintiffs argue that they tried to turn over control of the Litigation, but Defendants refused to take control.[80] Plaintiffs also contend that a question of fact exists as to whether they complied with the notice provision of the Cedar Point Agreement.[81]

## B. PLAINTIFFS MOTION

Plaintiffs assert that, if the Defendants are found to have breached their indemnification obligations, Defendants are liable for the entire amount of the settlement attributed to the Litigation.[82] In addition, Plaintiffs contend that Defendants cannot apportion damages based on the contribution of other companies' equipment.[83]

Defendants argue that Plaintiffs are not moving on any claim or defense, and so summary judgment is inappropriate.[84] Defendants further state that the Litigation asserted claims for infringement of multiple patents against multiple companies, and assuming (but not conceding) there is an indemnifiable claim, then they are only liable for the claims that accuse their equipment.[85]

## V. DISCUSSION

## A. DEFENDANTS MOTION

### 1. *Notice*

The parties provide competing interpretations of the Agreements' notice provisions. Defendants contend that neither the October 2018 Letter nor the Subpoena constitute notice

---

[79] *Id*.
[80] *Id*. at 32-35.
[81] Pl. Ans. Br., at 23.
[82] D.I. 160 ("Pl. Op. Br."), at 21-32.
[83] *Id*.
[84] Def. Ans. Br., at 1.
[85] D.I. 167 ("Def. Ans. Br."), at 25.

12

because the agreements require that Plaintiffs provide details of the Litigation.[86]  Plaintiffs contend that nothing more than the case name and number was required.[87]

"Issues of contract interpretation are questions of law reserved for the court."[88] "Delaware adheres to the 'objective' theory of contracts, *i.e.*[,] a contract's construction should be that which would be understood by an objective, reasonable third party."[89]  "Contract terms themselves will be controlling when they establish the parties' common meaning so that a reasonable person in the position of either party would have no expectations inconsistent with the contract language."[90]

"Absent some ambiguity, Delaware courts will not distort or twist contract language under the guise of construing it."[91]  This Court will give effect to the parties' intentions as reflected by the terms of an unambiguous contract, "construing the agreement as a whole as reflected in the four corners of the contract."[92]  "Contractual interpretation operates under the assumption that the parties never include superfluous verbiage in their agreement, and that each word should be given meaning and effect by the court."[93]

The Court finds the Agreements, and specifically the words "notifies,"[94] "notifying,"[95] and "notify"[96] to be unambiguous.  The Court, therefore, will adopt their plain and ordinary meaning and turn to the dictionary for guidance.[97]  Merriam-Webster defines "notify" as "to give

[86] Def. Op. Br., at 22-23.
[87] Pl. Ans. Br., at 19.
[88] *Benchmark Invs. LLC v. Pacer Advisors, Inc.*, 2024 WL 3567367, at *6 (Del. Super. July 29, 2024).
[89] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) (citing *NBC Universal v. Paxson Commc'ns*, 2005 WL 1038997, at *5 (Del. Ch. Apr. 29, 2005)).
[90] *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997).
[91] *Allied Cap. Corp. v. GC-Sun Hldgs., L.P.*, 910 A.2d 1020, 1030 (Del. Ch. 2006).
[92] *Texas Pacific Land Corp. v. Horizon Kinetics LLC*, 306 A.3d 530, 548 (Del. Ch. 2023).
[93] *NAMA Hldgs., LLC v. World Mkt. Ctr. Venture, LLC*, 948 A.2d 411, 419 (Del. Ch. 2007).
[94] Nortel Agreement, § 10.
[95] Cedar Point Agreement, § 6.1.
[96] Sonus Agreement, § 7.
[97] *Sprintz v. Division of Family Servs.*, 228 A.3d 691, 700 (Del. 2020).

formal notice to."[98]  "Notice" is defined as a "notification or warning of something, especially to allow preparations to be made."[99]  Accordingly, the Defendants' interpretation of the Agreements is correct.  Plaintiffs were required to provide written notice of a claim (*i.e.*, a claim by a third party for infringement that implicates Defendants intellectual property provided to Plaintiffs) that implicates Defendants' potential indemnification liabilities under the Agreements and as discussed below, the opportunity of Defendants to assume control of the defense and settlement of that claims.

"The purpose of summary judgment is to avoid the delay and expense of a trial where the ultimate fact finder … has nothing to decide."[100]  "[T]he trial court must determine whether the plaintiffs on the summary judgment record proffered evidence from which any rational trier of fact could infer that plaintiffs have proven the elements of a prima facie case" by the applicable legal standard.[101]  The question for a judge is not whether there is literally no evidence supporting the nonmoving party, rather it is whether the evidence would allow a rational juror to rule in favor of the nonmoving party.[102]  The standard is nearly identical to the standard for a directed verdict.[103]

The Court finds that the October 2018 Letter and the Subpoena are not the form of contractual notice required to trigger potential indemnification obligations under the Agreements.  The Agreements each provide a specific provision on indemnification and written notice.  These provisions are bargained for formal procedures that implicate potential serious

---

[98] *Notify*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/notify (last visited Apr. 14, 2025).
[99] *Sprintz*, 228 A.3d at 700.
[100] *Merrill v. Crothall-American, Inc.*, 606 A.2d 96, 99 (Del. 1992).
[101].*Cerberus Intern., Ltd. v. Apollo Mgmt., L.P.*, 794 A.2d 1141, 1149 (Del. 2002).
[102] *Deutsche Bank Tr. Co. Americas v. Royal Surplus Lines Ins. Co.*, 2012 WL 2898478, at *11 (Del. Super. July 12, 2012).  *See also Schuylkill and Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 448 (1871) ("[B]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it.").
[103] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986).

monetary obligations. While the specifics of each Agreement vary somewhat, the Agreements require Plaintiffs to provide written notice of a potential indemnification claim.[104]

The October 2018 Letter is from Plaintiffs' counsel, Kirkland & Ellis LLP. The October 2018 Letter does reference the Litigation by case name and number; however, the October 2018 Letter does not: (i) refer to the Agreements, or (ii) contend that a third-party claim has been made that implicates Defendants' products. Instead, the October 2018 Letter notifies Defendants that Plaintiffs are required to produce documents in the Litigation that may contain Defendants' confidential information. As discussed above, the October 2018 Letter does not discuss the nature of the Litigation, any mention of indemnification or whether the Defendants' products are accused products in the Litigation. The October 2018 Letter does not contain information to allow the Defendants to begin investigating and preparing for those obligations. Accordingly, no rational juror could find that these documents constitute notice under the Agreements.

The Subpoena does not constitute the form of written contractual notice required under the Agreements. It is a subpoena served by Plaintiffs on Defendants under Fed. R. Civ. P. 45.

Because the October 2018 Letter and the Subpoena do not constitute written notice under the Agreements, the Court does not need to address whether the two documents were provided with appropriate promptness. In addition, the Court does not need to address the issue of prejudice as it relates to the two documents.

The reality is that the July 2020 Letter is Plaintiffs' attempt to provide written notice under the Agreement. Plaintiffs' own language supports this conclusion. The July 2020 Letter provides that "[Plaintiffs] are providing notice of the above matter to [Defendants] pursuant to the indemnification provisions of our November 24, 2004 Master Agreement with Cedar Point

---

[104] Nortel Agreement, § 10; Cedar Point agreement, § 6.1; Sonus Agreement, § 7.

Communications Inc, June 10, 2011 Master Purchase Agreement with Sonus Networks, Inc., and all applicable amendments and subsequent agreements.  Please let me know when you are available to discuss how we can effectively defend this claim."[105]   Plaintiffs knew how to provide notice under the Agreements and the October 18, 2019 Letter and the Subpoena do not constitute such written notice.  The July 2020 Letter is the written notification of a "claim" under the Agreements.

Thus, Defendants' motion comes down to whether the July 2020 Letter was prompt, and if not, whether the delay prejudiced Defendants.  The Court finds that it was not prompt and that Defendants were prejudiced by the delay.

There are no disputed facts with respect to the July 2020 Letter.  Defendants do not contest that it constitutes notice under the Agreements, just its promptness and prejudice.[106]  The July 2020 Letter was sent 31 months after the Litigation began, after expert reports were served, and after dispositive motion briefing began.[107]

New York courts have found that a 21-month delay in notice was not prompt.[108]  That 21-month delay causes actual prejudice to an indemnitor if it deprives them of the right to control the defense or settlement of the claim.[109]  In *Conergics*, an indemnitee notified the indemnitor of the claim after failing to get its tax audit dismissed on constitutional grounds and after the Mexican government finished its review of the indemnitee's records and made its tax assessment.[110]  There were still additional proceedings where the indemnitor could potentially raise any issues it wanted to raise, but the Court found that the nearly two year delay, the

---

[105] Ex. X.
[106] Def. Op. Br., at
[107] Litigation, D.I. 1, Litigation, D.I. 565, Pl. Ans. Br., at 27.
[108] *Conergics Corp. v. Dearborn Mid-West Conveyor Co.*, 43 N.Y.S.3d 6, 13 (N.Y. App. Div. 2016).
[109] *Id*. at 16.
[110] *Id*. at 17.

completion of several important milestones in the case, and the indemnitor's ability to settle the case earlier had it been in control clearly established that the indemnitor had been prejudiced by the delay.[111]

Delaware courts have found that an 8-month delay was not prompt.[112] In Delaware, whether notice is prompt is determined "in view of the facts and circumstances of the particular case, and the mere lapse of time is not necessarily the determining factor."[113]

That test seems to invite the response that when notice is at issue, the matter cannot be handled through summary judgment. Under the uncontested facts present here, however, the July 2020 Letter was not prompt. Plaintiffs—sophisticated commercial entities represented by counsel—sent the July 2020 Letter 31 months after the Amended Complaint was filed, which referenced infringing equipment provided by Nortel and Cedar Point. Moreover, the July 2020 Letter was sent 22 months after the identification of accused products was served, 19 months after initial infringement contentions and 5 months after final infringement contentions.

Plaintiffs do not staunchly contest that the July 2020 Letter was late. Rather, Plaintiffs argue that their delay did not prejudice Defendants. Plaintiffs contend that when they sent the July 20, 2020 Letter there were still outstanding discovery issues in the Litigation, trial had not yet started, and the settlement discussions that led to the actual settlement had not begun.[114]

The Nortel Agreement does not contain a "prejudice" clause, and so the delayed notice is dispositive for this agreement. The Sonus Agreement and Cedar Point Agreement require that any delay in notice prejudice the Defendants.

[111] *Id.*
[112] *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Rhone-Poulenc Basic Chems. Co.*, 1992 WL 22690, at *9 (Del. Super. Jan. 16, 1992) (collecting cases).
[113] *Id.*
[114] Pl. Ans. Br., at 27.

17

Here, the July 2020 Letter was sent 31 months after the Litigation began, on the eve of trial (although the trial date was later pushed back), after most discovery was finished, after claim construction and final contentions, and after dispositive briefing.  The Court finds that this prejudiced Defendants.  That trial had not happened is true but must be discounted.  Sprint and Plaintiffs had already engaged in substantial settlement discussions, Plaintiffs had failed to have the complaint dismissed, the claims in Sprint's patents had already been construed, Plaintiffs had already served their final invalidity contentions, and Plaintiffs had already undertaken motion practice to disqualify Sprint's expert testimony and for summary judgment.  Short of notifying Defendants after trial, it is hard to imagine a more prejudicial time that Plaintiffs could have provided notice of indemnity obligations under the Agreements.

The Court also discounts the fact that the discussions that led to the Settlement Agreement had not yet begun when the Plaintiffs sent the July 2020 Letter.  Plaintiffs' argument on this point is undercut because they never notified Defendants that they began settlement discussions.  Plaintiffs only notified Defendants after an agreement was reached.[115]  Further, under Plaintiff's theory, Defendants could never face prejudice.  Plaintiffs' position would mean that Defendants would not be prejudiced in defending the action if they were notified *after trial*, if the case ultimately settled.  The Court finds that this is a less that valid interpretation of the prejudice clauses, because it would render the "prejudice" clause meaningless and lead to an absurd result.[116]

The Court finds that Defendants notice of the litigation from outside sources is not relevant here.  This is a type of constructive notice is enough argument.  As written, the

---

[115] Ex. AO.
[116] *Bastion Rest. Grp. LLC v. Gaudelet*, 2024 WL 5135977, at *4 (Del. Super. Dec. 17, 2024) ("Interpretations that render a provision meaningless, or yield absurd results, must be rejected).

Agreements require actual written notice and not constructive notice. The Agreements require Plaintiffs to act, not Defendants. Plaintiffs were required to provide written notice to Defendants of their potential indemnification obligations. At that point, Defendants may have become obligated to defend and indemnify. The Agreements allow Plaintiffs to defend themselves at their own cost. Absent Plaintiffs taking action to invoke contractual rights under the Agreements, Defendants would have no reason to believe that they would be required to indemnify Plaintiffs.

The Court also finds irrelevant that, after Plaintiffs sent the July 2020 Letter, Defendants determined the claims in the Litigation were not indemnifiable. Plaintiffs argue that this shows that Defendants were never going to defend the Litigation, so late notice did not prejudice them. This argument is flawed based on the plain language of the Agreements. The Cedar Point Agreement and Sonus Agreement forgive late notice, except if the Defendants' "ability to defend" any claim is prejudiced.[117] It is the prejudice to Defendants' "ability" to defend that matters, not prejudice in the outcome of the Litigation. It does not matter that Defendants may not have defended the Litigation if they been provided timely notice. Their ability to defend was prejudiced by the late notice.

Accordingly, Defendants Motion is **GRANTED**.

## 2. Control

Plaintiffs did not provide timely notice of the Litigation, and that delay prejudiced the Defendants. This is case dispositive. The Court does not need to address the parties' positions on whether Plaintiffs gave the necessary control to Defendants in the Litigation. The Court,

---

[117] Cedar Point Agreement, § 6.1; Sonus Agreement, § 7.

however, will briefly address the control argument because it provides a separate basis for granting summary judgment for Defendants.

The Court finds that the factual record in this civil action demonstrates that Plaintiffs did not allow Defendants to control the litigation. The Agreements require that Plaintiffs give "[Defendants] sole control of the defense thereof and any related settlement negotiations,"[118] or tender "to [Defendants] (and its insurer) full authority to defend or settle any such claim,"[119] or "allows [Defendants] to control, and cooperates with [Defendants] in, the defense and any related settlement negotiations."[120]

Each Agreement requires some action by Plaintiffs to turn over control of the Litigation or settlement discussions. There is no evidence in the record that Plaintiffs took any such action. Plaintiffs controlled throughout, handling all phases of the Litigation. Additionally, Plaintiffs did not allow Defendants to control settlement discussions. The record shows that after the October 2018 Letter, Plaintiffs rejected three settlement offers and made at least three offers to Sprint.[121] The record shows that Plaintiffs and Sprint reached a settlement agreement in principle on April 20, 2021.[122] The record shows that the first time Plaintiffs notified Defendants about any settlement discussions was not until April 28, 2021. No rational juror could conclude, based on this record, that the Plaintiffs gave Defendants sole control, tendered full authority to Defendants, or allowed Defendants to control the Litigation or settlement discussions.

---

[118] Cedar Point Agreement, § 6.1.
[119] Sonus Agreement, § 7.
[120] Nortel Agreement, § 10.
[121] Ex. AJ.; Ex. AK; Ex. AL.
[122] Ex. AN.

20

At argument, Plaintiffs seemed to imply that Defendants had an affirmative duty to request control of the Litigation. The plain language of the Agreements does not support Plaintiffs' position. The Agreements require Plaintiffs to initiate action. Plaintiffs are to provide notice to Defendants. Plaintiffs are to allow or give control of the defense and settlement to Defendants. The Agreements only require action by Defendants after the Plaintiffs provide notice and tender control.

For this additional reason, the Defendants Motion is **GRANTED**.

## B. PLAINTIFFS' MOTION

Defendants Motion is case dispositive. Accordingly, Plaintiffs Motion is **DENIED** as moot.

## VI.    CONCLUSION

For these reasons, Defendants Motion[123] is **GRANTED**. Plaintiffs Motion[124] is **DENIED**.

**IT IS SO ORDERED**

May 14, 2025
Wilmington, Delaware

/s/ Eric M. Davis
Eric M. Davis, President Judge

cc:    File&ServeXpress

---

[123] D.I. No. 159.
[124] D.I. No. 160.

21